

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| RCR PLUMBING AND MECHANICAL, INC. fka AMPAM RCR COMPANIES | ACE AMERICAN INSURANCE COMPANY and ESIS, INC. |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| OLIVA & ASSOCIATES, ALC | Joseph L. Oliva, Esq. (SBN 113889) JOliva@olivalaw.com |
| 11770 Bernardo Plaza Court, Suite 350 | Matthew L. Cookson, Esq. (SBN 219150) MCookson@olivalaw.com |
| San Diego, CA 92128   T: (858) 385-0491 / F: (858) 385-0499 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes   ☒ No   ☐ **MONEY DEMANDED IN COMPLAINT:** $ In excess of $75,000.

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. Section 1332(a) Diversity

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☒ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Fed. Employers' Liability | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | | ☐ 350 Motor Vehicle | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 362 Personal Injury-Med Malpractice | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 365 Personal Injury-Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | | ☐ 446 American with Disabilities - Other | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | **IMMIGRATION** | ☐ 440 Other Civil Rights | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 462 Naturalization Application | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

ED CV 10 - 00995

VAP

(DTBX)

| FOR OFFICE USE ONLY:   Case Number: _____ |
|---|
| AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW. |

CV-71 (05/08)                       CIVIL COVER SHEET                       Page 1 of 2

JUL 7 2010

Name & Address:
Joseph L. Oliva, Esq. (SBN 113889)
OLIVA & ASSOCIATES, ALC
11770 Bernardo Plaza Court, Suite 350
San Diego, CA 92128
Tel. (858) 385-0491 / Fax: (8580 385-0499

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RCR PLUMBING AND MECHANICAL, INC. fka AMPAM RCR COMPANIES, | CASE NUMBER |
| **ED CV** | **10 - 00995** VAP (DTBx) |
| v. PLAINTIFF(S) | |
| ACE AMERICAN INSURANCE COMPANY, and ESIS, INC. | |
| DEFENDANT(S). | **SUMMONS** |

TO:   DEFENDANT(S): _____

A lawsuit has been filed against you.

Within 20 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, Joseph L. Oliva _____, whose address is 11770 Bernardo Plaza Court, Suite 350, San Diego, CA 92128 _____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

TERRY NAFISI

Clerk, U.S. District Court

Dated:  JUL - 7 2010

By: _____
Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Virginia A. Phillips and the assigned discovery Magistrate Judge is David T. Bristow.

The case number on all documents filed with the Court should read as follows:

## EDCV10- 995 VAP (DTBx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

═══════════════════════════════════════════════════════════

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[X] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

1  Joseph L. Oliva, Esq., State Bar No. 113889
   Matthew L. Cookson, Esq., State Bar No. 219150
2  OLIVA & ASSOCIATES ALC
   11770 Bernardo Plaza Court, Suite 350
3  San Diego, California 92128
   Telephone: (858) 385-0491
4  Facsimile: (858) 385-0499

5  Attorneys for Plaintiff,
   RCR PLUMBING AND MECHANICAL,
6  INC. fka AMPAM RCR COMPANIES

7

8              UNITED STATES DISTRICT COURT

9        CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

10  RCR PLUMBING AND MECHANICAL,        CASE NO.
    INC. fka AMPAM RCR COMPANIES,
11                                      COMPLAINT FOR:
                Plaintiff,
12                                      1. Conversion
    v.                                  2. Breach of Written Contract – Policies
13                                      3. Breach of Oral Contact – Claims
    ACE AMERICAN INSURANCE                 Handling
14  COMPANY, and                        4. Breach of the Implied Covenant of
    ESIS, INC.                             Good Faith and Fair Dealing – Policies
15                                      5. Professional Negligence
                Defendants.             6. Declaratory Relief
16
                                        DEMAND FOR JURY TRIAL
17

18      Plaintiff, RCR PLUMBING AND MECHANICAL, INC. fka AMPAM RCR

19  COMPANIES, hereby alleges as follows:

20                    **JURISDICTION AND VENUE**

21      1.    Jurisdiction in this Court is proper under 28 U.S.C. Section 1332(a) in that there

22  is complete diversity of citizenship between Plaintiff and Defendants and the amount in

23  controversy exceeds $75,000.00.

24      2.    Venue is proper in this Court pursuant to 28 U.S.C. Section 1391(a) in that a

25  substantial part of the events or omissions giving rise to the claim occurred, and the property

26  that is the subject of the action is situated, in this district.

27  ///

28  ///

**PARTIES**

3.     At all times mentioned herein RCR PLUMBING AND MECHANICAL, INC. fka AMPAM RCR COMPANIES was and is a corporation duly organized and existing under the laws of the State of California and doing business in California, County of Riverside.

4.     Plaintiff is informed and believes and thereon alleges, that Defendant, ACE AMERICAN INSURANCE COMPANY ("ACE"), was and is at all relevant times a corporation duly organized and existing under the laws of the State of Pennsylvania, and doing business in California.

5.     Plaintiff is informed and believes and thereon alleges, that Defendant, ACE was and is at all relevant times either admitted to do business as an insurer under the laws of the State of California or authorized to sell insurance in the State of California, through a licensed surplus lines broker.

6.     Defendant ACE AMERICAN INSURANCE COMPANY is, at times, referred to as "ACE," the "CARRIER" or "CARRIER DEFENDANT."

7.     Plaintiff is informed and believes and thereon alleges, that Defendant, ESIS, Inc. ("ESIS") was and is at all relevant times a corporation duly organized and existing under the laws of the State of Pennsylvania, and doing business in California as an insurance claims handler.

**THE POLICIES**

8.     ACE made, executed and delivered one or more policies of commercial general liability insurance to Plaintiff, including without limitation the following: Policy No. HDO G21703187 (effective 11/01/03 to 11/01/04); Policy No. HDO G21703862 (effective 11/01/04 to 11/01/05); Policy No. HDO G2029968A (effective 11/01/05 to 11/01/06) and Policy No. HDO G2173651A (effective 11/01/06 to 11/01/07) (collectively "ACE Policies".)

///

///

///

9.     Policy No. HDO G21703187 (effective 11/01/03 to 11/01/04) included a $500,000 per occurrence deductible.  A true and correct copy of the declarations pages and deductible endorsement for Policy No. HDO G21703187 (effective 11/01/03 to 11/01/04) are collectively attached hereto as **Exhibit "A"** and incorporated herein by this reference as if set forth in full.

10.     Policy No. HDO G21703862 (effective 11/01/04 to 11/01/05) included a $500,000 per occurrence deductible.  A true and correct copy of the declarations pages and deductible endorsement for Policy No. HDO G21703862 (effective 11/01/04 to 11/01/05) are collectively attached hereto as **Exhibit "B"** and incorporated herein by this reference as if set forth in full.

11.     Policy No. Policy No. HDO G2029968A (effective 11/01/05 to 11/01/06) included a $250,000 per occurrence deductible.  A true and correct copy of the declarations pages and deductible endorsement for Policy No. HDO G2029968A (effective 11/01/05 to 11/01/06) are collectively attached hereto as **Exhibit "C"** and incorporated herein by this reference as if set forth in full.

12.     Policy No. HDO G2173651A (effective 11/01/06 to 11/01/07) included a $250,000 per occurrence deductible.  A true and correct copy of the declarations pages and deductible endorsement for Policy No. HDO G2173651A (effective 11/01/06 to 11/01/07) are collectively attached hereto as **Exhibit "D"** and incorporated herein by this reference as if set forth in full.

## COURSE OF CONDUCT OF ACE AND ESIS

**A.     ACE'S VIOLATION OF BANKRUPTCY ORDER**

13.     On or prior to August 2, 2004, a Bankruptcy Order was entered with respect to Plaintiff's predecessor, AMPAM RCR COMPANIES ("AMPAM"), thereby discharging AMPAM's obligations in bankruptcy, including without limitation, certain obligations arising out of construction defect lawsuits and deductible obligations under the ACE Policies.

///

14.    ACE was advised in a timely manner of this discharge of AMPAM's obligations pursuant to the Bankruptcy Order.  Specifically, the discharge from the initial Bankruptcy Order included all occurrences giving rise to property damage for work completed by Plaintiff on or prior to August 2, 2004 irrespective of the timing of the claim made against Plaintiff, excluding all liabilities specifically and expressly assumed by Plaintiff.  A true and correct copy of the August 2, 2004 Bankruptcy Order is attached hereto as **Exhibit "E"** and incorporated herein by this reference as if set forth in full.

15.    However, ACE interpreted the Bankruptcy Order differently than Plaintiff.  Unbeknownst to Plaintiff, ACE was accepting tenders from additional insureds in contravention of the Bankruptcy Order, and ACE refused to identify any such tenders to Plaintiff, refused to provide the identity of any of the additional insureds, and refused to advise Plaintiff of the monetary amount at issue in each tender.  Plaintiff was receiving bills which were within the respective ACE Policy deductible, which was being approved by Plaintiff.  However, at all material times, Plaintiff did not know ACE's acceptances of the additional insured tenders were in violation of the Bankruptcy Order.

16.    At all material times, Plaintiff mistakenly believed ACE was complying with the Bankruptcy Order.  On the contrary, ACE was actually accepting both additional insured and named insured tenders and paying claims based on these tenders in violation of the Bankruptcy Order.

17.    Accordingly, ACE continued to provide coverage to additional insureds under the ACE policies by accepting tenders of construction defect cases filed against both the developer and Plaintiff, even where such obligations were discharged.  Plaintiff subsequently discovered ACE accepting the additional insured tenders, and Plaintiff requested ACE to refrain from such conduct as a result of the Bankruptcy Order.  ACE refused, claiming the discharge did not apply.

18.    As a result of the dispute between Plaintiff and ACE, Plaintiff was compelled to petition the Bankruptcy Court to enforce and clarify the Bankruptcy Order and to confirm the scope of the discharge provided to Plaintiff.

19.     On July 11, 2008, the Bankruptcy Court issued its order enforcing and clarifying the scope of the discharge afforded by the Bankruptcy Court in favor of Plaintiff ("Enforcement Order") thereby validating Plaintiff's position. A true and correct copy of the July 11, 2008 Enforcement Order is attached hereto as **Exhibit "F"** and incorporated herein by this reference as if set forth in full.

20.     Both prior to and subsequent to the issuance of the July 11, 2008 Enforcement Order, Plaintiff repeatedly requested that ACE comply with the Bankruptcy Order and deny coverage for additional insured tenders under any of the ACE Policies consistent with the bankruptcy court's discharge ruling because providing such coverage would result in Plaintiff being obligated to pay up to the full deductible for any applicable ACE Policy.

21.     Notwithstanding the Enforcement Order and Plaintiff's repeated requests that ACE comply with the Enforcement Order and reimburse Plaintiff for deductibles paid for the acceptance of the additional insured tenders by ACE, ACE wrongfully refused, causing Plaintiff to unnecessarily expend substantial monies to satisfy deductibles for claims previously discharged by the bankruptcy court.

22.     Based on the wrongful acts of ACE in repeatedly and continuously violating the Bankruptcy Order, Plaintiff was forced to expend in excess of $500,000 to obtain the Enforcement Order.

23.     Plaintiff has asked ACE to reimburse these fees incurred to obtain the Enforcement Order since such fees and costs were incurred as a result of ACE's tortious acts. Alternatively, ACE was requested to repay the fees and costs pursuant to <u>Brandt v. Superior Court</u> (1985) 37 Cal.3d 813 because ACE's failures to comply with the Bankruptcy Order constituted an unreasonable conduct under the ACE Policies.

24.     Furthermore, when accepting the tenders, ACE knew, or should have known, that Bankruptcy Order discharged the additional insured tenders.

///

///

///

25.     Pursuant to the respective deductibles under the ACE Policies, by accepting the tenders, ACE caused Plaintiff financial harm by imposing deductibles on Plaintiff, in contravention of the Bankruptcy Order.  ACE was able to impose the payment or satisfaction of deductibles due to an existing letter of credit made part of the insurance program. Specifically, after accepting the tenders of defense made by additional insureds, in violation of the Bankruptcy Order, ACE would obtain funding of the defense and, if necessary, indemnity under the policy under the letter of credit up to the limit of the deductible amount.

26.     Due to these violations of the Bankruptcy Order, Plaintiff was required to mitigate damages and obtain the Enforcement Order.

27.     Accordingly, in providing coverage to the additional insureds under the ACE Policies, ACE was in direct violation of the Bankruptcy Court's rulings which had previously discharged such claims.  ACE's actions caused direct financial harm to Plaintiff.

28.     ACE knew or should have known, under the terms of the Bankruptcy Court Order, that the claims against Plaintiff were discharged and that ACE had no obligation to afford coverage to the additional insureds.  ACE's conduct which included, but was not limited to the refusal to abide by the Bankruptcy Order was unreasonable.

29.     Despite Plaintiff's observation ACE entered into a pattern of conduct whereby ACE repeatedly took a position contrary to the Bankruptcy Court Order by insisting on providing defense, without reasonable basis and at least on one occasion paid indemnity, to such additional insureds in response to their tenders for claims expressly discharged by the Bankruptcy Court, forcing Plaintiff to retain attorneys to mitigate damages and enforce the Bankruptcy Order.

30.     ACE's conduct caused Plaintiff to expend monies in legal fees and costs in having to pursue the Enforcement Order enticing compliance by ACE, who was voluntarily defending claims previously discharged.  Plaintiff's conduct in petitioning the Bankruptcy Order caused Plaintiff to expend fees and costs in order to secure compliance by ACE with the prior Order entered by the Bankruptcy Court.  The fees and costs expended by Plaintiff exceeded $500,000, an amount to be proven at trial.

31.     Furthermore, since the Bankruptcy Court's issuance of the Enforcement Order, ACE has violated such Order by refusing to timely report to Plaintiff's additional insured endorsement tenders of defense within fourteen days of receipt of tender.

**B.     ACE'S INSISTENCE THAT PLAINTIFF OBTAIN UNREASONABLY EXCESSIVE LETTER OF CREDIT**

32.     From the inception of the first ACE policy, as a condition of issuing the Policies, ACE demanded Plaintiff provide a letter of credit and enter into a related collateral agreement pursuant to which ACE is a beneficiary of the letter of credit. Also, Plaintiff was required to place collateral commensurate with the amount of the letter of credit.  Since the inception date of each policy, ACE has caused Plaintiff financial harm by causing Plaintiff to pay claims by ACE's threat to tap into the letter of credit to the extent Plaintiff refused to authorize ACE's request for payment of claims.

33.     For each policy period from 2004 to the present, Defendant set the amount of the letter of credit (approximately $5.2 Million) grossly in excess of any reasonable security interest of ACE. Based on Plaintiff's actual loss history from 2004 to 2010, ACE has provided no reasonable basis to require any letter of credit in excess of $5.2 Million.

34.     Plaintiff requested, on multiple occasions, that ACE reduce the amount of collateral required by ACE, but ACE refused to reduce this amount to Plaintiff.

35.     ACE's demand that Plaintiff agree to this excessive letter of credit was part of a scheme to be able to secure application of payment on the deductibles, irrespective of whether there was a reasonable basis to cover claims tendered by additional insureds.

36.     Without any justification, ACE arbitrarily and capriciously demanded its insured provide a letter of credit in excess of $5.2 Million, based on its anticipation of losses (defense and indemnity) in excess of $5.2 Million.  However, there was no reasonable basis for this amount, given Plaintiff's loss history.

///

///

///

37.    The collateral required by ACE pertaining to this letter of credit is unconscionable and excessive and is not supported by Plaintiff's loss runs or any other information obtained in the application and/or audit processes, nor is the amount of the letter of credit reasonable for ACE's security interests.

38.    Thus, the amount of the letter of credit required to be secured by Plaintiff has resulted in Plaintiff incurring substantial economic harm in excess of any reasonable premiums or related amounts in consideration of the coverage provided by the Policies.

**C.    FAILURES OF ACE AND ESIS TO SEEK CONTRIBUTION AND/OR PLACE OTHER CARRIERS ON NOTICE OF CLAIMS NOT DISCHARGED**

39.    Where ACE did have an obligation to defend and/or indemnify in response to a tender of defense, with respect to claims for which carriers on risk other than ACE were potentially obligated to provide additional insureds with coverage, ACE failed to place other Carriers on notice and failed to seek contribution from other Carriers on risk causing Plaintiff to have to pay a full deductible without reduction arising from payments from other Carriers.

40.    ACE should have either allowed Plaintiff to target other insurance on risk in order to allow Plaintiff to avoid the ACE deductible or, in the alternative ACE should have sought contribution from co-carriers on risk with ACE.  ACE's failure to do so unreasonably increased Plaintiff's share of the covered loss and caused Plaintiff to pay a higher deductible than that which was otherwise necessary.

41.    For some covered claims, ACE did not seek contribution and/or equitable subrogation from any other additional insured carriers of unrelated parties which refused to defend or did not pay a sufficient share of the additional insured obligation under their respective insurance policies issued to other subcontractors, resulting in improper change of a deductible.  Plaintiff, based on ACE's conduct, could not seek contributions from other carriers on the deductible.

42.    To the extent any of ACE's payments were made on behalf of any additional insured but where other insurance was triggered, or in the alternative, ACE had no obligation to defend under its additional insured endorsement ACE should have sought either

1   reimbursement from these additional insureds or contribution and/or equitable subrogation
2   from other carriers.  The failure to seek such contribution and/or equitable subrogation has
3   also caused Plaintiff financial harm in the payment of the ACE deductible without
4   contribution and/or equitable subrogation from those additional insureds.

5        43.    Evanston Insurance Company ("Evanston") filed an action seeking equitable
6   contribution from ACE for ACE's denial of coverage in <u>First Light Homeowners</u>
7   <u>Association v. D.R. Horton, Inc.</u>, Clark County, Nevada Court Case No. A499743.  ACE
8   charged Plaintiff a full deductible arising from such action.  Such imposition of a deductible
9   was incorrect because a contribution claim does not constitute an occurrence since the claim
10  for contribution arose out of the denial of coverage.  As a result of the imposition of a
11  deductible, Plaintiff was damaged in an amount to be proven at trial.

12       44.    Since a contribution action or a declaratory relief action between carriers does
13  not constitute an occurrence under any of the ACE Policies which would trigger any of the
14  deductible provisions, ACE cannot lawfully charge a deductible from Plaintiff for any such
15  equitable contribution or declaratory relief action or coverage action involving Plaintiff's
16  policies.  Notwithstanding the absence of such right, ACE imposed a deductible onto
17  Plaintiff in connection with declaratory relief actions filed against ACE by other carriers.

18       45.    At all material times, ACE has failed to secure equitable contribution from
19  other carriers on risk for claims implicating any of Plaintiff's ACE Policies.

20       46.    Furthermore, ACE also has failed to pursue reimbursement from any other
21  carriers for any portion of an additional insured claim obligation which was not in the scope
22  of any ACE Policy; because the portion was not related to Plaintiff's plumbing work.  In
23  such matters, ACE could have sought reimbursement of Plaintiff's payment of non-
24  plumbing-related share for these claims from other additional insured carriers or the
25  developer's carrier.  As a result, Plaintiff was damaged in an amount to be determined at
26  trial.

27  ///
28  ///

47.     As a part of the insurance contract, ACE required Plaintiff to use ESIS as the third party administrator which was to handle all claims pertaining to Plaintiff's ACE Policies.

48.     Plaintiff is informed and believes and thereon alleges that both ACE and ESIS are a part of the ACE Group of Companies and/or ESIS acted as the agent of ACE in the administering of claims and, consequently, at all material times, ESIS is and has been controlled by ACE, its officers, directors and managing agents.

49.     ESIS was retained by ACE to handle Plaintiff's claims pertaining to commercial general liability, workers compensation, additional insureds and automobile insurance.  Further, ESIS was retained by ACE to protect the interest of Plaintiff in response to the submissions of claims made against Plaintiff.  As such, ESIS was a dual agent acting on behalf of Plaintiff.

50.     At all material times, ESIS had a duty to Plaintiff to report and protect Plaintiff's legal and financial position by monitoring underlying claims, determining to what extent any claims were not potentially covered, and preserving all rights of reimbursement under the policy so that ESIS could reserve the right of reimbursement on Plaintiff's behalf under Buss v. Superior Court (1997) 16 Cal. 4th 35 for claims not arising from Plaintiff's work.

51.     ACE interfered with ESIS in the manner in which claims were handled to the legal and financial detriment of Plaintiff, as it failed to reserve rights under Buss for reimbursement of defense dollars expended in underlying claims.

52.     Consequently, either ACE or ESIS could have directed an action be commenced against other carriers seeking contribution, equitable subrogation and/or a Buss reservation for reimbursement for any of these claims.  Plaintiff had no duty or obligation to direct ACE or ESIS to seek any such recovery.

///

///

///

53.     ACE and ESIS were each required to investigate what portion of the defense of a claim was not covered in order to timely determine what rights to reserve pursuant to Buss. Further, ACE and ESIS also had an obligation owed to Plaintiff to monitor the underlying claims in order to determine what portion of the construction defects did not arise out of Plaintiff's work, since that would be outside of coverage and subject to a contribution from other carriers.

54.     This investigation and monitoring to determine the scope of actual coverage, and consequential determination whether to pursue other carriers for contribution or reimbursement, was directed by ACE and ESIS collectively, but ACE and ESIS failed to reasonably protect the interests of Plaintiff by not properly reserving rights under Buss.

**D.     THE ORAL CLAIMS HANDLING AGREEMENT WITH ACE AND ESIS MODIFYING THE POLICIES**

55.     Commencing in or about March 2006, Plaintiff, ACE and ESIS entered into a course of dealing with the claims where Plaintiff would handle its own claims handling, investigation, expense, defense and indemnity claims within the respective deductible for each applicable ACE Policy.  This course of dealing was confirmed at various times after March of 2006 by multiple ACE and ESIS adjusters and most recently in 2009, when ACE again verbally affirmed that this protocol was permissible.

56.     This course of conduct was intended to modify the language contained in the deductible endorsements in the ACE Policies identifying ESIS as the "Claims Service Organization."

57.     Plaintiff is informed and believes and thereon alleges, that ESIS charges a claims handling fee for each claim for which it receives notice, and that each fee is charged to Plaintiff as the insured.  For this reason, Plaintiff desired to handle its own claims.

///

///

///

///

58.     ACE purportedly permitted Plaintiff to handle its own defense of general liability claims which are within the respective deductible for the applicable ACE Policy from late 2006 to the present.  ACE represented to Plaintiff that Plaintiff would be permitted to handle its own defense of general liability claims within the respective deductible amount for the applicable ACE Policy.

59.     From 2006 through 2008, ACE's course of conduct has been inconsistent with the mutual understanding of the parties that Plaintiff was to handle its own defense of general liability claims which are within the respective deductible for the applicable ACE Policy.

60.     In 2009, ACE and ESIS, as ACE's designated claims handler, again orally agreed with Plaintiff, that in additional insured claims implicating any of the ACE Policies, ACE and ESIS would: (a) pursue equitable contribution from other carriers on risk; and (b) make appropriate Buss reservations and seek reimbursement from other carriers accordingly. This agreement was made so that Plaintiff would not pay a disproportionate share of defense fees within the deductible.  However, since entering into such agreement, ACE has failed to comply with such promises and commitments, causing Plaintiff significant harm.

## FIRST CAUSE OF ACTION

Conversion

(Against ACE)

61.     Plaintiff repeats, re-alleges and incorporates by this reference each and every allegation contained in all preceding paragraphs of this complaint as though set forth at length herein.

62.     ACE is in possession of an amount of money in excess of the jurisdictional requirements of this Court, which ACE obtained from Plaintiff by imposing deductible obligations on Plaintiff in violation of the terms of the Bankruptcy Court discharge of Plaintiff's predecessor, AMPAM.

63.     At all times mentioned herein, ACE knew of the Bankruptcy Court discharge, but still imposed a deductible on Plaintiff for matters discharged.

64.    Plaintiff's demand for reimbursement of monies taken by ACE based on the imposition of deductibles went ignored by ACE.

65.    ACE's refusal to reimburse monies charged to Plaintiff under the deductible provision constitutes conversion.

66.    ACE has refused to release any of the funds identified in this cause of action, despite multiple requests to do so by Plaintiff.

67.    Plaintiff has ownership or the right to possession of the funds identified in this cause of action, as these funds were not to be withheld by ACE.

68.    ACE has converted these funds by refusing to release the funds.

69.    Plaintiff, as a direct and proximate cause of ACE's actions has been damaged in Plaintiff has been damaged in an amount presently unknown, but in excess of the jurisdictional minimum of this court, to be established at the time of trial, according to proof, plus interest.

70.    ACE knew, or should have known, that the Bankruptcy Court's discharge of AMPAM required ACE to deny tenders received from additional insureds as set forth herein. Notwithstanding the discharge, ACE accepted the tenders of defense, charged Plaintiff with a deductible and has wrongfully retained funds withheld.

71.    As a result of ACE's actions in wrongfully imposing the deductible on Plaintiff, Plaintiff was forced to incur fees and costs in bringing suit to enjoin ACE from violating the Bankruptcy Court Order and to secure compliance with the Court Order, and has been damaged in a sum to be proven at trial.

72.    ACE's unlawful and unreasonable conversion of Plaintiff's monies pursuant to the deductible provision of the Policies caused Plaintiff to expend these attorney fees and costs, and therefore, these fees and costs are recoverable by Plaintiff pursuant to Brandt v. Superior Court (1985) 37 Cal.3d 813.

73.    ACE also knew that it was not entitled to retain such funds but maintained possession of such funds.

///

74.    These actions were, therefore, taken solely to protect the financial interests of ACE to the detriment of Plaintiff's financial interests.

75.    The above conduct by ACE has been, and continues to be, malicious, unreasonable, oppressive, fraudulent, and despicable.  ACE had improper motives, and ACE carried on with a willful and conscious disregard of Plaintiff's rights and economic safety.  Such despicable conduct by ACE would be looked down upon and despised by ordinary decent people.

76.    The respective officers, directors and managing agents of ACE participated in, authorized and ratified the wrongful conduct of said ACE as alleged above.

77.    The above-described conduct constitutes malicious, oppressive and despicable conduct and conscious disregard of Plaintiff's rights, and stems from improper and evil motives, so as to justify an award of punitive and exemplary damages.

## SECOND CAUSE OF ACTION

Breach of Written Contract

(Against ACE)

78.    Plaintiff repeats, re-alleges and incorporates by this reference each and every allegation contained in all preceding paragraphs of this complaint as though set forth at length herein.

79.    As set forth above, ACE, among other things, pursuant to the policy terms and conditions, agreed to investigate, adjust, immediately defend, and settle the claims asserted against Plaintiff on account of property damage caused by an occurrence, falling within or potentially falling within the coverage of, or as defined in, each insurance policy referenced herein.  Pursuant to each of these insurance policies, the CARRIER also had a duty to conduct a reasonable, adequate and diligent investigation of any claims made against Plaintiff and affecting the duty to defend by ACE.  Such investigation included the obligation to determine if coverage was potentially owed before accepting such tender.

///

///

80.   Plaintiff is informed and believes and thereon alleges, that the CARRIER has issued insurance policies as attributed to them hereinabove.  The purchase of said policies was intended to provide the principals of Plaintiff with a peace of mind that in event of a construction defect lawsuit following the completion of work, it would be defended and its legal and financial interests protected.  Plaintiff was further entitled under the ACE Policies to have ACE comply with all Bankruptcy Court Orders and not agree to defend actions where Plaintiff's obligations were discharged by the Bankruptcy Court and, in doing so, impose on Plaintiff a deductible up to $500,000 per occurrence.

81.   ACE also had a duty to abide by the Bankruptcy Order, by not providing additional insureds coverage under the policies, which would impermissibly obligate Plaintiff financially in contravention of that Bankruptcy Discharge Order so as to avoid the trigger of any deductible otherwise owed under the Policies.

82.   Plaintiff demanded on multiple occasions that ACE not provide coverage to additional insured entities in response to tenders where there was a prior discharge of liability and because such coverage would result in Plaintiff being responsible for a deductible obligation.

83.   Where the Bankruptcy Order did not discharge liability, Plaintiff requested on multiple occasions that ACE seek pro rata contribution from any other Carriers on risk for all claims in order to obtain reimbursement of the deductible or otherwise minimize Plaintiff's deductible obligations.

84.   Plaintiff requested ACE to seek contribution from additional insured carriers for trades other than Plaintiff where the tender of the defense by additional insureds was not discharged by the Bankruptcy Order.

85.   The CARRIER has refused to respond to each and all of the requests set forth herein, and instead ACE has accepted tenders of additional insureds notwithstanding the discharge by the Bankruptcy Court for such matters, consequently imposing a deductible obligation on Plaintiff in violation of the Bankruptcy Order.

///

86.     ACE has also breached its contractual duties to Plaintiff by violating the Enforcement Order, which Plaintiff was forced to obtain when ACE wrongfully accepted tenders of defense following the Bankruptcy Order discharging Plaintiff from such obligation.

87.     ACE's violations of the Enforcement Order include, without limitation, refusing to timely report to Plaintiff's additional insured endorsement tenders of defense within fourteen days of receipt of tender.

88.     In addition, since the issuance of the Enforcement Order ACE has also ignored other provisions of the Enforcement Order to the financial detriment of Plaintiff.

89.     As a result of the CARRIER's actions, Plaintiff has been forced to incur fees and costs and other expenses because of excessive/improper deductible obligations imposed in violation of the policy terms, the Bankruptcy Order and the Enforcement Order.

90.     In addition, Plaintiff has been forced to incur fees and costs and other expenses because of improper deductible obligations resulting from ACE ignoring Bankruptcy Order and the Enforcement Order.

91.     In breach of these insurance policies, the CARRIER through its officers and/or managerial agents, has refused and continues to refuse to pay and/or reimburse Plaintiff for the improper deductible obligations imposed in violation of the policy terms, the Bankruptcy Order and the Enforcement Order.

92.     The refusal of the CARRIER to comply with Plaintiff's demands that ACE comply with the Bankruptcy Order and the Enforcement Order and reimburse Plaintiff for fees and costs incurred in pursuing enforcement of the Bankruptcy Order and failure to seek contribution from other carriers on risk in order to reduce the amount paid under the deductible constitutes a breach of policy terms and conditions of the subject policies as construed under California law.

///

///

///

93.     By reason of these actions, the CARRIER has breached its written contracts of insurance under which Plaintiff is entitled to reimbursement of all payments made by ACE within the deductible on all matters where ACE has accepted the defense in violation of the Bankruptcy Order discharging Plaintiff from any liability, and in violation of the Enforcement Order.

94.     As a direct and proximate result of the breaches by the CARRIER of its duties, Plaintiff has suffered substantial damages, including but not limited to attorneys' fees and costs, experts' fees and costs, costs and other expenses in defense, repair, loss adjustment, mitigation, investigation and settlement and other costs and expenses in an amount presently unknown, but in excess of the jurisdictional minimum of this court, to be established at the time of trial, according to proof.

95.     As a direct and proximate result of the breaches by the CARRIER of its duties and in mitigation of Plaintiff's own damages, Plaintiff has incurred attorneys' fees and costs, experts' fees and costs and other costs and expenses in bringing this action, in an amount according to proof.

96.     Plaintiff has been damaged in an amount presently unknown, but in excess of the jurisdictional minimum of this court, to be established at the time of trial according to proof in order to secure coverage and compliance of ACE's duties under the policy and as construed under California law.

### THIRD CAUSE OF ACTION

Breach of Oral Contract – Claims Handling

(Against ACE and ESIS)

97.     Plaintiff repeats, re-alleges and incorporates by this reference each and every allegation contained in all preceding paragraphs of this complaint as though set forth at length herein.

98.     As set forth above, ACE and ESIS agreed Plaintiff would be permitted to control its own defense of general liability claims which are within the respective deductible for each applicable ACE Policy referenced herein.

99.     Also as set forth above, ACE and ESIS agreed that in additional insured claims implicating any of the ACE Policies, ACE and ESIS would: (a) pursue equitable contribution from other carriers on risk; and (b) make appropriate Buss reservations and seek reimbursement from other carriers accordingly.

100.    The oral agreements as set forth herein, constitute the oral claims handling agreement between Plaintiff, ACE and ESIS. This agreement was made so that Plaintiff would control the manner in which claims were handled and so that Plaintiff would not pay a disproportionate share of defense fees within the deductible.

101.    Plaintiff is informed and believes and thereon alleges, that ACE and ESIS entered into the oral claims handling agreement as attributed to them hereinabove notwithstanding the language in the ACE Policies regarding ESIS serving as the "Claims Service Organization". Said oral claims handling agreement requires ACE and ESIS to allow Plaintiff to handle its own additional insured claims.

102.    Plaintiff has requested ACE and ESIS to comply with the claims handling agreement, but ACE and ESIS have expressly refused to permit Plaintiff to defend itself in claims, have refused to seek contribution from other carriers on risk, and have failed to communicate Buss reservations to other carriers and insureds for such claims, all in breach of the terms of the oral claims handling agreement reached after the issuance of the Policies.

103.    Plaintiff reasonably relied on representations of ACE and ESIS to Plaintiff as attributed to them herein.

104.    Subsequent to the agreement, Plaintiff began to handle its own investigation and defense of underlying actions and liability suits without insisting that ACE or ESIS or any other entity handle the defense. In fact, pursuant to the agreement, ACE and ESIS were required to allow Plaintiff to handle its own defense but, for unknown reasons, refused to acknowledge the agreement, instead having ESIS investigate and handle these claims, and charging Plaintiff with a deductible.

105.    ACE and ESIS have breached the oral claims handling agreement by insisting on the retention and use of ESIS as the claims handling entity.

106.   ACE and ESIS have also breached the oral agreement by failing to seek pro-rata contributions from co-carriers on risk for a claims regarding the shared additional insured obligations and by failing to communicate appropriate <u>Buss</u> reservations to other carriers.

107.   By reason of the refusal of ACE and ESIS to comply with the terms of the oral claims handling agreement, ACE and ESIS have breached this oral agreement.

108.   ACE and ESIS also breached the oral agreement by failing to seek reimbursement of portions of the deductible paid by Plaintiff reflecting the percentage of deductible which would have been reduced had ACE and ESIS have sought contribution from other carriers on risk.

109.   As a direct and proximate result of the breaches by ACE and ESIS, Plaintiff has been damaged by having to pay a disproportionate share of defense fees and costs.

110.   Furthermore, as a direct and proximate result of the breaches by ACE and ESIS, Plaintiff has been damaged in an amount presently unknown, but in excess of the jurisdictional minimum of this court, to be established at the time of trial, according to proof.

## FOURTH CAUSE OF ACTION

Breach of the Implied Covenant of Good Faith and Fair Dealing – Policy

(Against ACE)

111.   Plaintiff repeats, re-alleges and incorporates by this reference each and every allegation contained in all preceding paragraphs of this complaint as though set forth at length herein.

112.   The CARRIER at all material times had the duty to act fairly and in good faith to Plaintiff with respect to as an insured in carrying out its responsibilities under its policies of insurance.

///
///
///
///
///

113.   Inherent in each of the insurance policies issued by ACE to Plaintiff as an insured was an implied covenant of good faith and fair dealing, which imposed upon the CARRIER the duty to deal fairly and honestly with Plaintiff in good faith and to do nothing to the detriment of Plaintiff, or to impair, interfere with, hinder, potentially deprive Plaintiff of its rights and benefits under said insurance policies, including without limitation, protecting Plaintiff from financial obligations in contravention of Bankruptcy Court Orders.

114.   ACE was under a further duty to honor the contractual obligations contained in applicable insurance policies with respect to which the Plaintiff was an insured.

115.   Pursuant to the insurance policies, the CARRIER has implicit obligations to act fairly and in good faith to Plaintiff to promptly and reasonably investigate claims against Plaintiff and claims made by additional insureds under these policies and to make reasonable coverage decisions.   The insurance policies identified herein are subject to an implied covenant of good faith and fair dealing such that no party will disturb the rights of the other to obtain the full benefits of the contract.  ACE has breached the implied covenant of good faith and fair dealing when imposing on Plaintiff a financial deductible obligation by agreeing to defend cases under the Subject Policy in contravention of a Bankruptcy Court Orders.

116.   Plaintiff is informed and believes and thereon alleges, that the CARRIER breached its obligations to act fairly and in good faith towards Plaintiff by committing, among other things, the following acts and omissions:

a.   Embarking on a course of conduct and pattern and practice, whereby the CARRIER would provide defense and, at times, indemnity, to additional insureds under the policies, thus impermissibly imposing on Plaintiff deducible obligations in violation of the Bankruptcy Court Discharge Order despite Plaintiff's repeated requests that ACE not to do so;

b.   Refusing to reimburse Plaintiff for the deductible obligations impermissibly imposed in violation of the Bankruptcy Court Discharge Order despite Plaintiff's repeated requests that ACE reimburse these funds;

c.      Impermissibly stacking multiple deductibles and/or self-insured retentions on a per-policy basis in violation of policy terms and in violation of law all to Plaintiff's financial detriment;

d.      Allowing and/or imposing on Plaintiff a disproportionate share of additional insured defense based on the number of carriers rather than the number of parties;

e.      Embarking on a course of conduct and pattern and practice, whereby the CARRIER would fail to seek contribution from co-Carriers on risk;

f.      Failing to seek contribution from additional insured Carriers of unrelated parties who have refused to defend or have not paid a sufficient share of the additional insured obligation under their insurance policies issued to other subcontractors, resulting in improper payment of Plaintiff's deductible share;

g.      Embarking on a course of conduct and pattern and practice, whereby the CARRIER would fail to seek reimbursement from additional insureds to the extent the CARRIER made payments on behalf of any additional insureds, but where the CARRIER had no such coverage obligation;

h.      Requiring improperly excessive collateral for a line of credit provided to Plaintiff, where the amount of collateral required by ACE for this line of credit is not supported by Plaintiff's loss runs or any other information obtained in the application and/or audit processes;

i.      Refusing to conduct a reasonable investigation and unreasonably and knowingly refusing to comply with the terms of the policies;

j.      Imposing on the insured severe financial hardship, by causing damages to Plaintiff, including, but not limited to, attorneys' fees and costs;

///

///

k.      Refusing to acknowledge the obligations to Plaintiff pursuant to the terms of the policies by wrongfully and purposefully misconstruing the subject policy language relied upon by the Carriers and ignoring the clear language in the policy;

l.      Adopting unreasonable and unwarranted interpretations and applications of provisions, deductibles and exclusions in the CARRIER's policies, all to the detriment of Plaintiff's interests;

m.      Ignoring and/or unreasonably, purposefully and intentionally interpreting the terms of the Bankruptcy Order inaccurately solely in an attempt to avoid disputes with developers on the additional insured endorsements (rather than reject the tenders based on the Bankruptcy Court Order/Discharge);

n.      Reliance on policy and deductible terms which had no application and constituted a fraudulent claims handling practice;

o.      Refusing to provide Plaintiff with any reasonable or justifiable basis for the decision to impose deductible obligations on Plaintiff in violation of policy terms and in violation of the Bankruptcy Order;

p.      Refusing to provide Plaintiff with any reasonable or justifiable basis for the decision to stack multiple deductibles and/or self-insured retentions on a per-policy basis in violation of policy terms and in violation of law;

q.      Interpreting the provisions of the policies and the factual circumstances so as to resolve ambiguities and uncertainties against Plaintiff and to favor their own economic interests; and

r.      Misrepresenting the insurance policy provisions.

117.    The above despicable conduct by ACE has been and continues to be unreasonable, capricious, arbitrary, and constitutes a breach of the covenant of good faith and fair dealing.

118.   Such conduct enumerated above was malicious, unreasonable, oppressive, fraudulent, and despicable, had improper motives, including a desire by ACE to cause injury, vex, annoy, and oppress Plaintiff, and were carried on by ACE with a willful and conscious disregard of Plaintiff's rights and economic safety.  Such despicable conduct by ACE would be looked down upon and despised by ordinary decent people.

119.   The respective officers, directors and managing agents of ACE participated in, authorized and ratified the wrongful conduct of said ACE as alleged above.

120.   As a result of the bad faith conduct of the CARRIER in this matter, Plaintiff has suffered substantial damages, including but not limited to attorneys' fees, costs and expenses in defense, repair, loss adjustment, mitigation, investigation and settlement and other costs and expenses in response to the Underlying Action and have been required to bring this Complaint to enforce its right as an insured under the policies mentioned herein. Plaintiff is entitled to recover as damages against the CARRIER all the aforementioned fees, costs and expenses which it has incurred with interest thereon.   Plaintiff has suffered damages and will continue to suffer damages within the jurisdiction of this Court, according to proof.

121.   Plaintiff is further entitled to recover as damages against the CARRIER all fees, expenses and costs incurred in this action to enforce its rights under the respective insurance policies, plus interest thereon, according to proof, and to secure coverage as set forth under the Bankruptcy Order and as set forth under California law.

122.   The above described conduct of the CARRIER has been and continues to be unreasonable, capricious and arbitrary, and constitutes breach of the covenant of good faith and fair dealing contained in each and all of the insurance policies referred to above in this Complaint.

123.   The above-described conduct further constitutes malicious, oppressive and despicable conduct and conscious disregard of Plaintiff's rights, and stems from improper and evil motives, including ACE's desire to reduce or avoid its obligations to Plaintiff, so as to justify an award of punitive and exemplary damages.

**FIFTH CAUSE OF ACTION**

Professional Negligence

(Against ESIS)

124.   Plaintiff repeats, re-alleges and incorporates by this reference each and every allegation contained in all preceding paragraphs of this complaint as though set forth at length herein.

125.   As set forth above, ESIS agreed to handle Plaintiff's claims pertaining to commercial general liability, workers compensation, additional insureds and automobile insurance for the benefit of Plaintiff.

126.   As a part of this agreement, ESIS had a duty to Plaintiff to report and protect Plaintiff's legal and financial position by monitoring underlying claims, determine to what extent any claims were not covered, preserve all rights of reimbursement under the deductible, so ESIS could reserve the right of reimbursement for claims not arising under Plaintiff's work under <u>Buss</u>, and commence proceedings to obtain such contribution and/or reimbursement when necessary to protect Plaintiff's interests.

127.   Additionally, as part of ESIS's agreement to handle Plaintiff's claims, ESIS had a duty to ensure Plaintiff was not obligated more than a pro-rata, per party share, rather than a per-carrier share in claims where more than one of Plaintiff's carriers was on risk.

128.   Plaintiff is informed and believes and thereon alleges, that at all material times ESIS acknowledged these obligations and duties as attributed to it hereinabove.

129.   ESIS acted as agent on behalf of Plaintiff with regard to these duties and owed Plaintiff a duty to act reasonably in the performance of such duties.

130.   ESIS failed to comply with the duties owed to Plaintiff by negligently issuing reservation of rights letters, and negligently failing to seek contribution or <u>Buss</u> reimbursement from other carriers for claims in which Plaintiff paid a deductible and where there was no coverage obligation under the ACE Policies.

131.   Further ESIS negligently failed to comply with its duties by not issuing <u>Buss</u> reservations of rights when appropriate to protect Plaintiff's rights.

132.   ESIS has also negligently failed to comply with these duties by failing to seek pro-rata contributions from co-carriers on risk for claims regarding the shared additional insured obligations.

133.   In addition to breaching its duties owed to Plaintiff, ESIS has failed to meet the standard of care it owes to Plaintiff consistent with applicable insurance industry standards regarding the handling and managing of claims filed against Plaintiff.

134.   Under insurance industry standards of care, ESIS was obligated to seek on behalf of Plaintiff, contribution where appropriate so that Plaintiff would not be financially harmed by being required to pay a deductible in excess of its pro-rata, per-party share in response to claims involving multiple carriers of Plaintiff, and/or a <u>Buss</u> reimbursement where such deductible payment would be for claims not arising out of Plaintiff's work, and, therefore, not within the coverage of the ACE Policies.

135.   At all material times, ESIS knew of these insurance industry standards, and knew the scope of its duties owed to Plaintiff thereunder.

136.   ESIS's failures to comply with the express and industry standard duties owed to Plaintiff constitute negligence on behalf of ESIS.

137.   As a result of the negligence of ESIS, Plaintiff has been harmed and suffered damages in the form of legal fees and costs to investigate, defend and settle underlying claims and in the form of legal fees and costs incurred in this action

138.   Further, Plaintiff has been damaged as it has been forced to incur fees and costs and other expenses because of improper deductible obligations as a result of ESIS's failure to seek contribution and/or <u>Buss</u> reimbursement from additional insured carriers for trades other than Plaintiff, and for ESIS failure to ensure Plaintiff was not subject to more than a pro-rata, per party share rather than a per-carrier share in claims involving more than one policy for Plaintiff.

///

///

///

### SIXTH CAUSE OF ACTION

Declaratory Relief

(Against ACE and ESIS)

139.   Plaintiff repeats, re-alleges and incorporates by this reference each and every allegation contained in all preceding paragraphs of this complaint as though set forth at length herein.

140.   As set forth above, Plaintiff contends, and ACE and ESIS dispute, that among other things, ACE and ESIS agreed that it would not impose unnecessary deductible obligations on Plaintiff, including without limitation, deductibles for coverage provided to additional insureds in violation of the Bankruptcy Order and the Enforcement Order.

141.   Plaintiff contends, and ACE and ESIS dispute, that ACE and ESIS agreed that Plaintiff would handle its own claims within the deductible in house, including without limitation, having counsel of Plaintiff's choice, with no claims handling fee charged to Plaintiff.

142.   Plaintiff contends, and ACE and ESIS dispute, that ACE and ESIS also agreed that upon receipt of additional insured tenders where more than one carrier for Plaintiff was involved that they would ensure that Plaintiff's additional insured share would be on a per-party basis and not a per-carrier basis.

143.   Plaintiff contends, and ACE and ESIS dispute, that ACE and ESIS agreed that they would seek contribution from other carriers in cases implicating any of the ACE Policies, or that they would make appropriate Buss reservations and reimbursement claims or that Plaintiff could seek contribution and/or reimbursement from these carriers in the name of ACE and ESIS.

144.   Plaintiff contends, and ACE disputes, that it was agreed by ACE that Plaintiff would not be responsible for a letter of credit as security in excess of that reasonably necessary given Plaintiff's identifiable loss history actually suffered by Plaintiff.

///

///

145.   Plaintiff contends, and ACE disputes, that, with respect to defending contribution and/or declaratory relief actions from other carriers against ACE pertaining to matters not discharged by the Bankruptcy Order, ACE agreed that Plaintiff would not be required to contribute to the defense of such claims, since these do not constitute occurrences under any of the ACE Policies.

146.   Plaintiff contends, and ACE and ESIS dispute, that, to the extent ESIS is and was retained by ACE to handle Plaintiff's claims pertaining to commercial general liability, workers compensation, additional insureds and automobile insurance, ESIS has a duty of cooperation and communication with Plaintiff as a dual agent of both Plaintiff and ACE, including a duty to advise of significant events pertaining to coverage and Plaintiff's financial condition.

147.   Plaintiff contends, and ACE and ESIS dispute, that ACE and ESIS both have an obligation, subject to Plaintiff's consent, to provide a proper reserve within the deductible upon receipt of additional insured tenders.

148.   Plaintiff has suffered financially from the respective failures of ACE and/or ESIS comply with these agreements and duties, including without limitation, improper deductible obligations, fees and costs, including attorneys' fees and costs, experts' fees and costs, settlement, repair, investigation, loss and adjustment fees, costs and expenses incurred to obtain the Enforcement Order.

149.   Plaintiff has performed all conditions, covenants and promises required to be performed in accordance with the terms and conditions of each written contract of insurance and all terms of the oral agreements as set forth herein, except to the extent that Plaintiff was prevented by ACE and/or ESIS or excused from such performance, or said conditions, covenants and promises have accrued or have been waived as a result of the breaches of ACE and/or ESIS.

///

///

///

150.   A dispute has arisen between Plaintiff, on the one hand, and ACE and ESIS collectively on the other in that Plaintiff contends that it was and is entitled to performance from ACE and ESIS of the promises and duties set forth herein.   Plaintiff is informed and believes and thereon alleges that ACE and ESIS unreasonably contend otherwise.

151.   An actual controversy exists between Plaintiff, on the one hand, and ACE and ESIS collectively on the other regarding the promises and duties of ACE and ESIS as set forth herein.   A declaratory judgment is necessary and appropriate to determine the rights and duties of the parties under these promises and duties.

WHEREFORE, Plaintiff prays for judgment against each and every one of the Defendants as follows:

## ON THE FIRST CAUSE OF ACTION

1.   For compensatory damages according to proof, but in an amount within the jurisdiction of this Court;

2.   For punitive and exemplary damages according to proof;

3.   For attorney's fees and costs, according to proof;

## ON THE SECOND AND THIRD CAUSES OF ACTION

4.   For compensatory damages according to proof, but in an amount within the jurisdiction of this Court;

5.   For attorney's fees and costs of suit in obtaining the Bankruptcy Court July 11, 2008 Enforcement Order;

## ON THE FOURTH CAUSE OF ACTION

6.   For compensatory damages according to proof, but in an amount within the jurisdiction of this Court;

7.   For punitive and exemplary damages according to proof;

8.   For attorney's fees and costs of suit in obtaining the benefits owed under each respective insurance policy, pursuant to Brandt v. Superior Court (1985) 37 Cal.3d 813, according to proof;

///

1       9.      For attorney's fees and costs of suit in obtaining the Bankruptcy Court July 11,

2    2008 Enforcement Order;

3                              **ON THE FIFTH CAUSE OF ACTION**

4       10.     For compensatory damages according to proof, but in an amount within the

5    jurisdiction of this Court;

6                              **ON THE SIXTH CAUSE OF ACTION**

7       11.     For a declaratory judgment that Plaintiff is entitled to reimbursement of

8    payment of deductibles on cases defended by Plaintiff in violation of the Bankruptcy Order

9    and the July 11, 2008 Enforcement Order;

10      12.     For attorney fees and costs incurred in obtaining the Bankruptcy Court July 11,

11   2008 Enforcement Order, which enjoined ACE to comply with the Bankruptcy Order;

12      13.     For a declaratory judgment that Plaintiff is permitted to handle its own claims

13   within the deductible, including without limitation, having counsel of Plaintiff's choice, with

14   no claims handling fee charged to Plaintiff;

15      14.     For a declaratory judgment that Plaintiff is entitled to reimbursement of

16   payment of deductibles on cases involving more than one carrier for Plaintiff, where Plaintiff

17   was responsible for coverage shares on a per-carrier basis, as opposed to a per-party basis;

18      15.     For a declaratory judgment that Plaintiff is entitled to reimbursement of

19   deductibles where ACE and/or ESIS failed to seek contribution or reimbursement from other

20   carriers who issued policies for trades other than that of Plaintiff and which provided

21   additional insured coverage;

22      16.     For a declaratory judgment that Plaintiff will not be responsible for a letter of

23   credit, or any other such security in excess of that reasonably necessary given Plaintiff's

24   identifiable loss history actually suffered by Plaintiff;

25      17.     For a declaratory judgment that Plaintiff will not be required to contribute to the

26   defense of contribution and/or declaratory relief actions from other carriers against ACE

27   pertaining to matters not discharged by the Bankruptcy Order;

28   ///

H:\RCR Companies - ACE\Pleadings\Complaint v10 FINAL.doc

29

18.   For a declaratory judgment that ESIS has a duty of cooperation and communication with Plaintiff, including a duty to advise of significant events pertaining to coverage and Plaintiff's financial condition;

19.   For a declaratory judgment that ACE and ESIS must provide a proper reserve, subject to Plaintiff's consent, within the deductible upon receipt of additional insured tenders;

## ON ALL CAUSES OF ACTION

20.   For costs of suit herein;

21.   For interest at the legal rate; and

22.   For all such other and further relief as the Court may deem just and proper.

DATED: July 6, 2010                     OLIVA & ASSOCIATES, ALC


By: _____
     Joseph L. Oliva, Esq.
     Matthew L. Cookson
     Attorneys for Plaintiff,
     RCR PLUMBING AND MECHANICAL, INC.
     fka AMPAM RCR COMPANIES

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rule of Civil Procedure.

DATED: July 6, 2010                                   OLIVA & ASSOCIATES, ALC


By: _____
Joseph L. Oliva, Esq.
Matthew L. Cookson
Attorneys for Plaintiff,
RCR PLUMBING AND MECHANICAL, INC.
fka AMPAM RCR COMPANIES

# TABLE OF CONTENTS OF EXHIBITS

| EXHIBIT | DESCRIPTION | PAGE(S) |
|---|---|---|
| A | A true and correct copy of the declarations pages and deductible endorsement for Policy No. HDO G21703187 (effective 11/01/03 to 11/01/04) | 33-39 |
| B | A true and correct copy of the declarations pages and deductible endorsement for Policy No. HDO G21703862 (effective 11/01/04 to 11/01/05) | 40-46 |
| C | A true and correct copy of the declarations pages and deductible endorsement for Policy No. HDO G2029968A (effective 11/01/05 to 11/01/06) | 47-53 |
| D | A true and correct copy of the declarations pages and deductible endorsement for Policy No. HDO G2173651A (effective 11/01/06 to 11/01/07) | 54-62 |
| E | A true and correct copy of the August 2, 2004 Bankruptcy Order | 63-130 |
| F | A true and correct copy of the July 11, 2008 Enforcement Order | 131-137 |

# EXHIBIT A

# General Liability Policy – Declarations

ACE USA 

☐ Bankers Standard Insurance Company
1601 Chestnut Street, P.O. Box 41484
Philadelphia, Pennsylvania 19101-1484

☐ ACE Property and Casualty Insurance Company
1601 Chestnut Street, P.O. Box 41484
Philadelphia, Pennsylvania 19101-1484

☐ Century Indemnity Company
1601 Chestnut Street, P.O. Box 41484
Philadelphia, Pennsylvania 19101-1484

☐ Indemnity Insurance Company of North America
1601 Chestnut Street, P.O. Box 41484
Philadelphia, Pennsylvania 19101-1484

☐ ACE Fire Underwriters Insurance Company
1601 Chestnut Street, P.O. Box 41484
Philadelphia, Pennsylvania 19101-1484

☐ Insurance Company of North America
1601 Chestnut Street, P.O. Box 41484
Philadelphia, Pennsylvania 19101-1484

☒ ACE American Insurance Company
1601 Chestnut Street, P.O. Box 41484
Philadelphia, Pennsylvania 19101-1484

☐ Pacific Employers Insurance Company
1601 Chestnut Street, P.O. Box 41484
Philadelphia, Pennsylvania 19101-1484

## POLICY IDENTIFICATION

| HDO | G21703187 |

**NAMED INSURED AND ADDRESS**

American Plumbing & Mechanical, Inc.
1950 Louis Henna Blvd.
Round Rock, TX  78664

PRIOR POLICY NO. OR NEW: New

PRODUCER CODE: 442660     COMM: 110,000
Marsh USA
1000 Louisianna, Suite 4000
Houston, TX  77002

MARKETING OFFICE: 5EM
MARKET HAZARD CODE:
PIIC CODE: 1711        INDUSTRY CODE:

| POLICY IS | : | New | OF |
| NAMED INSURED IS | : | Corporation | |
| BUSINESS OF INSURED | : | Plumbing | |
| POLICY PERIOD | : | FROM 11/01/2003 | TO 02/01/2004  11·1·04 extended |

12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.

## PREMIUM PAYMENT CONDITIONS

| AUDIT PERIOD | : | Annual |
| PAYMENT FREQUENCY | : | |
| PAYMENT SCHEDULE | : | |

TOTAL ADVANCE PREMIUM:  $ 424,993 Minimum & Deposit

PREMIUMS RESULTING FROM AUDIT ARE NOT INCLUDED IN THE ABOVE.

LD-8E00b (8/96) Printed in the U.S.A.

| | | | POLICY IDENTIFICATION |
|---|---|---|---|
| DECLARATIONS – GENERAL LIABILITY POLICY   Page 2 | | HDO | G21703187 |

## COVERAGES AND LIMITS OF INSURANCE

In return for the payment of premium indicated above, we agree with you to provide the following coverage(s) at the limits shown, subject to all of the terms and conditions of this policy.

Coverage Form:                                                                          Limits of Insurance

COMMERCIAL GENERAL LIABILITY
    Each Occurrence Limit                                              $   1,000,000
    Damage to Premises Rented to You Limit                  $   5,000
    Medical Expense Limit (any one person or organization)   $   10,000
    Personal & Advertising Injury Limit                        $   1,000,000
    General Aggregate Limit (other than Products/            $   1,000,000
       Completed Operations)                              $   1,000,000
    Products/Completed Operations Aggregate Limit

    $
    $
    $

    $
    $

## SCHEDULE OF LOCATIONS

**LOCATION NUMBER AND ADDRESS**

LD –2F52b (Ed. 10/01) Printed in U.S.A.                                                          AA067274a

| DECLARATIONS – GENERAL LIABILITY POLICY   Page 3 | POLICY IDENTIFICATION |
|---|---|
| | HDO   G21703187 |

## SCHEDULE OF COVERAGES

### COVERAGE PART:

| Location Number | Coverage | Class Code/ Classification Description | Premium Basis | Exposure | Rate | Premium |
|---|---|---|---|---|---|---|
| All | | 8483 | S | * | $ 2.5568 | $ 424,993 |
| | | * 457,391,000 | | | | |
| | | | | | $ | $ |
| | | | | | $ | $ |
| | | | | | $ | $ |
| | | | | | $ | $ |
| | | | | | $ | $ |
| | | | | | $ | $ |
| | | | | | $ | $ |

TOTAL PREMIUM FOR THIS COVERAGE PART                                     $  424,993

When used as a premium basis the following code definitions apply:

A -   Area – Per 1,000 square feet of area
C -   Total Cost – per $1,000 of total cost
D -   If Any
E -   Admissions – per 1,000 admissions
F -   Flat Charge
J -   Total Operating Expenditures – per $1,000 of Expenditures

O -   Other
P -   Payroll – per $1,000 of payroll
S -   Gross Sales – per $1,000 of Gross Sales
U -   Units
X -   Each

LD-2F51a (Ed. 3/87) Printed in U.S.A.

AA067271a

DECLARATIONS – GENERAL LIABILITY POLICY     Page 4

POLICY IDENTIFICATION

| HDO | G21703187 |

---

## FORMS AND ENDORSEMENTS (Page 1 of 2)

FORMS AND ENDORSEMENTS ATTACHED TO THIS POLICY AT INCEPTION

SCHEDULE OF COVERAGE PARTS

IL00171198    Common Policy Conditions
CG00011001    Commercial General Liability Coverage Form

SCHEDULE OF ENDORSEMENTS

| Endt. No. | Form No. | Description |
|---|---|---|
| 1. | CC1E15 | Broad Form Named Insured Endorsement |
| 2. | LD5X70 | Composite Rate Endorsement |
| 3. | CC1E15 | Construction Defects Exclusion Endorsement |
| 4. | CC1E15 | Cancellation By Us |
| 5. | LD7F23 | Absolute Pollution Exclusion |
| 6. | LD2G44 | Amendment of Conditions |
| 7. | LD6U75b | Deductible Endorsement |
| 8. | LD9863A | Employee Benefits Liability Endorsement |
| 9. | LD3R16 | Exclusion – Asbestos |
| 10. | LD4S35 | Exclusion – Lead |
| 11. | LD5T92 | Fellow Employee Coverage |
| 12. | LD5T98 | Nonowned Watercraft Exception |
| 13. | CG25040397 | Designated Location(s) General Aggregate Limit |
| 14. | CG21470798 | Employment - Related Practices Exclusion |
| 15. | CG22430798 | Exclusion – Engineers, Architects or Surveyors Professional Liability |
| 16. | CG21670402 | Fungi or Bacteria Exclusion |
| 17. | IL00210702 | Nuclear Energy Liability Exclusion Endorsement (Broad Form) |
| 18. | CG24041093 | Waiver Of Transfer Of Rights Of Recovery Against Others To Us |
| 19. | TRIA11 | Policyholder Disclosure Notice of Terrorism Insurance Coverage |
| 20. | IL02580900 | Arizona Changes - Cancellation and Nonrenewal |
| 21. | IL02700498 | California Changes - Cancellation and Nonrenewal |
| 22. | CG02200398 | Florida Changes - Cancellation and Nonrenewal |
| 23. | IL02620702 | Georgia Changes - Cancellation and Nonrenewal |
| 24. | IL02510900 | Nevada Changes - Cancellation and Nonrenewal |
| 25. | CG26201093 | New Jersey Changes - Loss Information |

This declaration and the coverage form(s) and endorsements, if any, listed above and attached, completes this policy.

COUNTERSIGNED AT: _____     AUTHORIZED AGENT: _____

DATE: _____

LD-2A48a (Ed. 3/87) Printed in U.S.A.                                          AA 067266a

SCHEDULE OF FORMS AND ENDORSEMENTS

| Named Insured | American Plumbing & Mechanical, Inc. | | Endorsement Number (Page 2 of 2) |
|---|---|---|---|
| Policy Symbol HDO | Policy Number G21703187 | Policy Period 11/01/2003 to 02/01/2004 | Effective Date of Endorsement 11/01/2003 |

Issued By (Name of Insurance Company)
ACE American Insurance Company

Insert the policy number  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

| Endt. No. | Form No. | Description |
|---|---|---|
| 26. | CG29850391 | New Jersey Changes - Loss Information |
| 27. | IL02080900 | New Jersey Changes - Cancellation and Nonrenewal |
| 28. | CG01031000 | Texas Changes |
| 29. | IL01680101 | Texas Changes - Duties |
| 30. | IL02750695 | Texas Changes - Cancellation and Nonrenewal Provisions For Casualty Lines and Commercial Package Policies |

Authorized Agent

CC-1E15 Ptd. In U.S.A.

POLICY NUMBER: HDO G21703187                                                ENDT.  #7

# DEDUCTIBLE ENDORSEMENT

| Named Insured<br>American Plumbing & Mechanical, Inc. | | | Endorsement Number<br>7 |
| Policy Symbol<br>HDO | Policy Number<br>G21703187 | Policy Period<br>11/01/2003  to  02/01/2004 | Effective Date of Endorsement<br>11/01/2003 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

SCHEDULE

| | |
|---|---|
| Deductible Per Occurrence | $  500,000 |
| Claims Service Organization | ESIS, Inc. |

1. In consideration of a reduced or adjusted premium, the Limits of Insurance set forth in the policy declarations are subject to and include the Deductible amount stated in the Schedule above.

   a.   The Deductible Per Occurrence shall apply separately to:

      (1)   The sum of all damages under Coverage A and medical expenses under Coverage C arising out of any one "occurrence"; and

      (2)   The sum of all damages under Coverage B sustained by any one person or organization.

2. In the event you are unable to pay the Deductible amount or any portion thereof, our obligation to pay damages to satisfy a judgment or pay a settlement shall include the Deductible amount or any portion thereof.  However, our obligation to pay damages under this policy shall not exceed the Limits of Insurance as set forth in the policy declarations.

3. Our obligation under Section 1 – Coverages, Supplementary Payments – Coverages A and B of this policy has not changed.

4. You and we mutually agree that the Claim Service Organization shown in the Schedule will provide investigation, administration, adjustment, and settlement services, and will provide for the defense of all claims or "suits" arising under this policy.

5. You agree with us that we shall not have any duty to defend any such "suit."

6. You agree with us that we shall have no duty to pay any "allocated loss adjustment expense" within the Deductible amounts with respect to any claim or "suit".

7. You will pay all sums the insured becomes legally obligated to pay within the Deductible Per Occurrence and all "allocated loss adjustment expenses" related to such claims.

8. We will have the right at our sole discretion:

   a.   To pay any damages under this policy within the Deductible Per Occurrence should you fail to pay any final judgment against or settlement entered into by an insured.

LD-6U75b (07/01) Printed in U.S.A.                                          Page 1 of 2

b.    To pay any amounts within the Deductible Per Occurrence to settle any claim or "suit".

c.    To assume the defense and control of any claim or "suit" seeking payment of damages under this policy that we believe will exceed the Deductible Per Occurrence; and

d.    To pay any "allocated loss adjustment expense" incurred by us associated with **a., b., or c.** above.

You shall promptly reimburse us for any sums we may have paid under Items **2 and/or 8.**

9.  All terms, conditions, and limitations of this policy not inconsistent with this endorsement shall continue to apply.

## DEFINITIONS

When used in this endorsement:

"<u>Deductible Per Occurrence</u>" shall mean the amount of damages and "allocated loss adjustment expense" under this policy which you have a duty to pay and which arise from (i) any one "occurrence" to which insurance applies under this policy or (ii) "personal injury" or "advertising injury" (or "personal and advertising injury" if so defined in your policy) sustained by any one person or organization.

"<u>Allocated Loss Adjustment Expense</u>" shall mean any expenses, costs, and interest provided for under Section 1 – Coverages, Supplementary Payments – Coverages A and B of this policy, or any other expenses, costs or interest incurred in connection with the investigation, administration, adjustment, settlement or defense of any claim or "suit" arising under this policy, which the Claim Service Organization shown in the Schedule, under its accounting practices, directly allocates to a particular claim, whether or not a payment indemnifying the claimant(s) is made.  Such expenses include, but are not limited to, subrogation, all court costs, fees and expenses; fees for service of process; fees and expenses to attorneys for legal services; the cost of services of undercover operations and detectives; fees to obtain medical cost containment services; the cost of employing experts for the purpose of preparing maps, photographs, diagrams, and chemical or physical analysis, or for expert advice or opinion; the cost of obtaining copies of any public records; and the cost of obtaining depositions and court reporters or recorded statements. "Allocated loss adjustment expense" shall not include the salaries of our employees, adjuster's fees, the Claim Service Organization employees or any potential Claim Service Organization employees.

_____
Authorized Agent

EXHIBIT A, Page 39

**EXHIBIT B**

# *General Liability Policy – Declarations*

ACE USA



☐ Bankers Standard Insurance Company
1601 Chestnut Street, P.O. Box 41484
Philadelphia, Pennsylvania 19101-1484

☐ ACE Property and Casualty Insurance Company
1601 Chestnut Street, P.O. Box 41484
Philadelphia, Pennsylvania 19101-1484

☐ Century Indemnity Company
1601 Chestnut Street, P.O. Box 41484
Philadelphia, Pennsylvania 19101-1484

☐ Indemnity Insurance Company of North America
1601 Chestnut Street, P.O. Box 41484
Philadelphia, Pennsylvania 19101-1484

☐ ACE Fire Underwriters Insurance Company
1601 Chestnut Street, P.O. Box 41484
Philadelphia, Pennsylvania 19101-1484

☐ Insurance Company of North America
1601 Chestnut Street, P.O. Box 41484
Philadelphia, Pennsylvania 19101-1484

☒ ACE American Insurance Company
1601 Chestnut Street, P.O. Box 41484
Philadelphia, Pennsylvania 19101-1484

☐ Pacific Employers Insurance Company
1601 Chestnut Street, P.O. Box 41484
Philadelphia, Pennsylvania 19101-1484

### POLICY IDENTIFICATION

| HDO | G21703862 |
|-----|-----------|

NAMED INSURED AND ADDRESS

American Plumbing & Mechanical, Inc.
1950 Louis Henna Blvd.
Round Rock, TX  78664

| POLICY IS | : | Renewal | OF HDO G21703187 |
|---|---|---|---|
| NAMED INSURED IS | : | Corporation | |
| BUSINESS OF INSURED | : | Plumbing | |
| POLICY PERIOD | : | FROM 11/01/2004 | TO 11/01/2005 |

12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.

## PREMIUM PAYMENT CONDITIONS

| AUDIT PERIOD | : | Annual |
|---|---|---|
| PAYMENT FREQUENCY | : | |
| PAYMENT SCHEDULE | : | |

TOTAL ADVANCE PREMIUM:  $ 697,698 Minimum & Deposit

EMIUMS RESULTING FROM AUDIT ARE NOT INCLUDED IN THE ABOVE.

LD-8E00b (8/96) Printed in the U.S.A.

| | | POLICY IDENTIFICATION | |
|---|---|---|---|
| DECLARATIONS – GENERAL LIABILITY POLICY   Page 2 | HDO | G21703862 | |

## COVERAGES AND LIMITS OF INSURANCE

In return for the payment of premium indicated above, we agree with you to provide the following coverage(s) at the limits shown, subject to all of the terms and conditions of this policy.

Coverage Form:                                                                                      Limits of insurance

COMMERCIAL GENERAL LIABILITY
    Each Occurrence Limit                                                          $   1,000,000
    Damage to Premises Rented to You Limit                              $   5,000
    Medical Expense Limit (any one person or organization)      $   10,000
    Personal & Advertising Injury Limit                                        $   1,000,000
    General Aggregate Limit (other than Products/                    $   1,000,000
        Completed Operations)                                                     $   1,000,000
    Products/Completed Operations Aggregate Limit

                                                                                                    $
                                                                                                    $
                                                                                                    $

                                                                                                    $
                                                                                                    $

## SCHEDULE OF LOCATIONS

**LOCATION NUMBER AND ADDRESS**

LD –2F52b (Ed. 10/01) Printed in U.S.A.                                                          AA067274a

| DECLARATIONS – GENERAL LIABILITY POLICY   Page 3 | POLICY IDENTIFICATION | |
|---|---|---|
| | HDO | G21703862 |

## SCHEDULE OF COVERAGES

### COVERAGE PART:

| Location Number | Coverage | Class Code/ Classification Description | Premium Basis | Exposure | Rate | Premium |
|---|---|---|---|---|---|---|
| All | | 98483 | S | * | $ 2.34688 | $ 697,698 |
| | | * 297,287,852 | | | | |
| | | | | | $ | $ |
| | | | | | $ | $ |
| | | | | | $ | $ |
| | | | | | $ | $ |
| | | | | | $ | $ |
| | | | | | $ | $ |
| | | | | | $ | $ |

| TOTAL PREMIUM FOR THIS COVERAGE PART | $ 697,698 |
|---|---|

When used as a premium basis the following code definitions apply:

A -   Area – Per 1,000 square feet of area  
C -   Total Cost – per $1,000 of total cost  
D -   If Any  
E -   Admissions – per 1,000 admissions  
F -   Flat Charge  
J -   Total Operating Expenditures – per $1,000 of Expenditures  

O -   Other  
P -   Payroll – per $1,000 of payroll  
S -   Gross Sales – per $1,000 of Gross Sales  
U -   Units  
X -   Each  

EXHIBIT B, Page 42

| DECLARATIONS – GENERAL LIABILITY POLICY   Page 4 | POLICY IDENTIFICATION | |
|---|---|---|
| | HDO | G21703862 |

FORMS AND ENDORSEMENTS (Page 1 of 2)

FORMS AND ENDORSEMENTS ATTACHED TO THIS POLICY AT INCEPTION

SCHEDULE OF COVERAGE PARTS

IL00171198    Common Policy Conditions
CG00011001    Commercial General Liability Coverage Form

SCHEDULE OF ENDORSEMENTS

| Endt. No. | Form No. | Description |
|---|---|---|
| 1. | CC1E15 | Broad Form Named Insured Endorsement |
| 2. | LD5X70a | Composite Rate Endorsement |
| 3. | CC1E15 | Additional Insured/Primary Insurance Endorsement |
| 4. | CC1E15 | Cancellation By Us |
| 5. | CC1E15 | MTBE Exclusion Endorsement |
| 6. | CC1E15 | Silica, Dust, and Particulate Matter Exclusion |
| 7. | LD7F23 | Absolute Pollution Exclusion |
| 8. | LD2G44 | Amendment of Conditions |
| 9. | LD6U75b | Deductible Endorsement |
| 10. | LD9863A | Employee Benefits Liability Endorsement |
| 11. | LD3R16 | Exclusion - Asbestos |
| 12. | LD4S35 | Exclusion - Lead |
| 13. | LD5T92 | Fellow Employee Coverage |
| 14. | LD5T98 | Nonowned Watercraft Exception |
| 15. | CG20100704 | Additional Insured - Owners, Lessees or Contractors - Scheduled Person or Organization |
| 16. | CG20101185 | Additional Insured - Owners, Lessees or Contractors (Form B) |
| 17. | CG25040397 | Designated Location(s) General Aggregate Limit |
| 18. | CG21470798 | Employment - Related Practices Exclusion |
| 19. | CG22430798 | Exclusion - Engineers, Architects or Surveyors Professional Liability |
| 20. | CG22330798 | Exclusion - Testing or Consulting Errors and Omissions |
| 21. | CG21670402 | Fungi or Bacteria Exclusion |
| 22. | IL00210504 | Nuclear Energy Liability Exclusion Endorsement (Broad Form) |
| 23. | CG24041093 | Waiver Of Transfer Of Rights Of Recovery Against Others To Us |
| 24. | TRIA11 | Policyholder Disclosure Notice of Terrorism Insurance Coverage |

This declaration and the coverage form(s) and endorsements, if any, listed above and attached, completes this policy.

COUNTERSIGNED AT: _____    AUTHORIZED AGENT: _____

DATE: _____

D-2A48a (Ed. 3/87) Printed in U.S.A.                                    AA 067266a